## BROWN v. ADIRONDACK FARMS.

(Supreme Court, Appellate Division, Third Department. July 1, 1915.)

Appeal from Trial Term, Washington County.

Action by Walter J. Brown, an infant, by Llewellyn Brown, his guardian ad litem, against the Adirondack Farms. From a judgment for plaintiff for the sum of $1,087.36, and from an order denying its motion for a new trial, defendant appeals. Judgment and order affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

J. Ward Russell, of Glens Falls (Wm. S. Ostrander, of Saratoga Springs, of counsel), for appellant.

Rogers & Sawyer, of Hudson Falls (Erskine C. Rogers, of Hudson Falls, of counsel), for respondent.

PER CURIAM. Judgment and order affirmed, with costs.

SMITH, P. J. (dissenting). Defendant is a corporation working farms in the town of Ft. Ann and Moreau. In December, 1912, the

defendant was operating a corn husker and shredder. The shredder was a machine several feet in length, at the end of which was a table from which corn was thrown from below. Along this table was a running board on the opposite side to the corn loads. On this running board an operator stood. Bundles of corn tied with twine were pitched down from the loads to the table. This corn was pushed into the rolls of the shredder, and was thrown by those rolls into the interior of the machine, from which finally it reached a silo which was being filled. Upon the machine, on the side opposite to which the operator stood, was a door or cover which covered the shredder head rolls. This door was hinged at the top of the machine to be lifted up. When the stalks were damp, they would sometimes accummulate and wind up with some of the twine around this shredder head, and stop the action of the shredder head. The shredder head, together with the rest of the machine, was driven by a belt attached to an 18 horse power gasoline engine, which was located about 30 or 40 feet in the rear of the shredder. This belt ran from a pulley of about 30 inches in diameter on the engine to a pulley on a shaft which operated the shredder head. The face of this latter pulley was about 8 inches wide. Sometimes, when the corn was wet, the machine would become clogged by the winding of the corn and strings around the cutter head. Ordinarily, when the machine became clogged, the belt would be thrown off from the pulley which operated the shredder head, and thus the power would stop. This door on the opposite side of the table could then be opened, and the corn and strings which clogged the machine could safely be taken out. At times, however, if the belt was a little loose, instead of being thrown from this small pulley, which operated the shredder, it would slip around it, so that, when the clogging was relieved by the pulling out of the corn and strings, the belt would take hold of the pulley and start the machinery in motion.

The plaintiff was a boy, who at the time of the trial in January, 1915, was 19 years of age. In December, 1912, at the date of the accident he was 16 or 17 years of age. He had been employed for about 3 months driving team drawing hay, and the defendant's witnesses claim that he never had been asked to do anything whatever with the working of this shredder. His evidence is that he was several times asked to feed the machine, and did do it, and that sometimes it clogged three or four times a day, and it would clog almost every day; that he had seen Mattison, the foreman, go around and lift up the cover under which were the rolls with knives and spikes on them which were clogged, and he had seen him reach in and pull the stalks out. He swears that after this was unclogged the rolls would start up slowly, and that he himself had fed the husker, and when it had clogged he had gone around on the other side of the table, and had opened this door, and had pulled out the stalks and the strings without stopping the engine, and that when he had gotten it unclogged the shredder would begin to move. Upon the day in question, the 4th day of December, 1912, according to the plaintiff's testimony, he was told to feed the shredder. The shredder became clogged, and he went around and opened the door and started to pull out the corn and the

strings, and that the machinery thereupon started and caught his hand and pulled off his arm.

It is not claimed that the defendant was negligent in not furnishing a proper machine. It is not shown that any other machines were furnished which would prevent this clogging. No question was submitted to the jury as to any negligence of the defendant in not furnishing proper tools with which to remove this clogging. The only question submitted to the jury bearing upon defendant's negligence was the question whether the plaintiff had been properly instructed upon the danger involved in relieving the clogging of the shredder, and the jury must be presumed to have found that the defendant was negligent in not giving proper instructions.

This finding was, in my judgment, without legal warrant, because the danger was so obvious that instructions would have been superfluous. It is not claimed that the plaintiff did not know that upon the removing of the clog the machinery started up. The only claim of negligence upon which this judgment is sought to be sustained is that in this particular case it started up faster than it ordinarily started up, and that he had not been warned that the machinery would start up so rapidly upon the removing of the clogging. If, then, the defendant had warned the plaintiff that there was danger in removing this clogging by reason of the starting of the machinery, it would not have prevented the accident, because this fact the plaintiff already knew. The only warning which, if any, would have been effective, according to the plaintiff's own theory, is the warning that sometimes the machinery would start more rapidly than at other times. To my mind to require the master to give that warning, which could only be considered material after an accident disclosed its materiality, would be to place a greater burden upon the master than reasonable care and prudence would require. It is true that the boy has been injured, and I will assume by reason of his age that he was not guilty of negligence contributing to the accident. The action is not brought under the Employers' Liability Act; it is a common-law action for negligence. However unfortunate to the boy the accident may have been, I am unable to find any negligence of the defendant in failing to inform the boy of the danger involved in his work, which was obvious, and of which apparently he had as much information as had the master himself. I recommend, therefore, that the judgment and order be reversed, and the complaint dismissed, upon the finding of this court that the defendant has been guilty of no negligence which caused this injury.

HOWARD, J., concurs herein.